**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LA WANDA E. HERRON, | : | CIVIL ACTION NO. 08-1417 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**COOPER, District Judge**

The plaintiff, La Wanda E. Herron, applies for judicial review of the final decision of the defendant, Commissioner of Social Security ("Commissioner"), dated August 27, 2007, denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). (Dkt. entry no. 1, Compl.) The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

**BACKGROUND**

The plaintiff filed a claim for DIB on August 12, 2004, and a claim for SSI on May 31, 2005, alleging that she became unable to work on June 29, 2004. (Administrative R. ("A.R.") at 23.) The plaintiff's claims were denied initially and on reconsideration. (Id. at 65-68, 73-75.) The plaintiff appealed, and Administrative Law Judge Dennis O'Leary ("ALJ") conducted a

hearing on February 15, 2006, in which the plaintiff was represented by counsel.  (Id. at 69-71, 475-492.)

The ALJ issued a decision on March 3, 2006, finding, inter alia, (1) the plaintiff "met the disability insured status requirements of the Act on June 29, 2004, and continues to meet them through the present," (2) the plaintiff "has not engaged in substantial gainful activity since June 29, 2004," (3) the plaintiff "has had a 'severe' impairment involving vertigo and vestibular dysfunction, but does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4," (4) the plaintiff's "subjective complaints of disabling pain and other symptoms and Limitation precluding all significant work activity are not credited or supported by the evidence," (5) the plaintiff's "residual functional capacity has been, since June 29, 2004, limited to performing work that involves lifting and carrying objects weighing up to 100 pounds; frequently lifting and carrying objects weighing up to 50 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and avoid working at heights and around machinery," (6) the plaintiff "has had, at all material times, the residual functional capacity to perform her past relevant work of a clerk typist," and (7) the plaintiff "has not been disabled."  (Id. at 49-55.)

The ALJ concluded the plaintiff is not entitled to DIB or SSI. (Id. at 54-55.)  The plaintiff appealed the March 3, 2006, ALJ decision. (Id. at 109-112.)  The Social Security Administration Appeals Council ("Appeals Council") remanded plaintiff's case to the ALJ, inter alia, for further consideration of evidence and clarification of plaintiff's mental impairment, subjective complaints, and residual functional capacity. (Id. at 62-64.)

The ALJ held a supplemental hearing on May 10, 2007. (Id. at 493-509.)  The ALJ then issued a decision on August 21, 2007, finding, inter alia, the plaintiff (1) "meets the insured status requirements of the Social Security Act through December 31, 2009," (2) "has not engaged in substantial gainful activity since June 29, 2004, the alleged onset date," (3) "has the following severe impairments: vestibular dysfunction with migraine headaches; depression; and obesity (20 C.F.R. [§§] 404.1520(c) and 416.920(c))," (4) "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," (5) "has the residual functional capacity to perform sedentary work," "must avoid heights and hazards," and "has depression with mild restriction of the activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated

episodes of deterioration . . . [and] is able to perform at least simple and repetitive tasks," (6) "is capable of performing her past relevant work as a clerk/typist, an account specialist, and a school aid (20 C.F.R. [§§] 404.1565 and 416.965)," and (7) "has not been under a disability, as defined in the Social Security Act, from June 29, 2004 through the date of this decision." (Id. at 38-42.)

The ALJ concluded the plaintiff was not entitled to DIB or SSI. (Id. at 43.) The Appeals Council denied review of the August 27, 2007, ALJ decision on December 10, 2007. (Id. at 9-11.) The plaintiff applied for review here on March 19, 2008. (Dkt. entry no. 1.)

**DISCUSSION**

**I.   Standard Of Review**

The Court may review a "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing. Id. This judicial review, however, is limited. The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence. Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). "Substantial evidence" in the context of a Social Security matter is defined as less than a

preponderance of the evidence but "more than a mere scintilla,"
i.e., such evidence "as a reasonable mind might accept as
adequate to support a conclusion." Richardson v. Perales, 402
U.S. 389, 401 (1971) (quotation and citations omitted).  This
standard "is deferential and includes deference to inferences
drawn from the facts if they, in turn, are supported by
substantial evidence." Schaudeck v. Comm'r of Soc. Sec. Admin.,
181 F.3d 429, 431 (3d Cir. 1999).

        Despite the deference given to administrative decisions
under this standard, the Court "retain[s] a responsibility to
scrutinize the entire record and to reverse or remand if the . .
. decision is not supported by substantial evidence." Smith v.
Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

        [a] single piece of evidence will not satisfy the
        substantiality test if the [Commissioner] ignores, or
        fails to resolve, a conflict created by countervailing
        evidence.  Nor is evidence substantial if it is
        overwhelmed by other evidence - particularly certain
        types of evidence (e.g., that offered by treating
        physicians) - or if it really constitutes not evidence
        but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the
record contains evidence which could have supported a different
conclusion does not undermine" the Commissioner's decision
provided that the record contains substantial evidence supporting
that decision. Rivera v. Shalala, No. 94-2740, 1995 WL 495944,
at *3 (D.N.J. July 26, 1995).  The Commissioner is required,

however, to address and reconcile medical evidence that would support a contrary conclusion.  Schaudeck, 181 F.3d at 435.

## II.  Determining Eligibility For Disability Insurance Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled."  In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits.  Id. § 404.1520(b).  If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step.  Id. §

404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability to do basic work activities, including, inter alia, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  Id. §§ 404.1521(a)-(b), 416.921(a)-(b).  A claimant not meeting this requirement is not disabled.  Id. § 404.1520(c).  Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the CFR. 20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage.  Id. § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  Id. § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  Id. § 404.1520(a)(4)(iv).  The claimant, if able to resume the previous work, will not be

7

considered disabled.  Id.  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the claimant's ability to perform other work that is available in the national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e).  This inquiry requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

## III. Analysis of The Plaintiff's Claim

The plaintiff argues that the ALJ's findings are not supported by substantial evidence.  (Dkt. entry no. 9, Pl. Br. at 19.)  Specifically, the plaintiff claims that (1) the medical evidence was improperly evaluated, and (2) the plaintiff meets a listed impairment.  (Id. at 20-31.)  The plaintiff also contends that the opinion of the treating physician should be given particular weight.  (Id. at 20.)  The Commissioner argues, by

8

contrast, that the decision that the plaintiff is not disabled is supported by substantial evidence.  (Dkt. entry no. 10, Def. Br. at 12.)

In determining whether a claimant is entitled to disability benefits, the ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." <u>Plummer</u>, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected.  <u>Cotter v. Harris</u>, 650 F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  <u>Id.</u>  The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001).

An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason." <u>Plummer</u>, 186 F.3d at 429 (quotation and citation omitted).  "When the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981).  While treating physician opinions are "accorded great weight," an ALJ "may afford a treating physician's opinion

more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429 (citation omitted).  Comprehensive analysis by the ALJ allows the Court to properly review the ALJ's decision pursuant to Section 405(g) to determine whether the decision is supported by substantial evidence.  Cotter, 642 F.2d at 705.

The Court need not examine the ALJ's step one determination that the plaintiff has not engaged in work activity after her alleged disability onset date.  (See A.R. at 38.)  The Court also need not examine the step two determination that the plaintiff has the severe impairments of vestibular dysfunction with migraine headaches, depression, and obesity.  (See id.)  Further, the Court need not consider step five because the Court finds that the ALJ's step four determination that the plaintiff could perform past relevant work is supported by substantial evidence. (See id. at 39-42; infra Sec. III.B.)  Therefore, the Court will address the ALJ's determinations at step three and step four of the sequential analysis.

**A.   Sufficiency of the ALJ's Explanation at Step Three**

The plaintiff contends that the ALJ did not properly evaluate evidence that the plaintiff's condition meets a listed impairment.  (Pl. Br. at 29.)  The plaintiff argues that she meets the requirements for the listed impairment "disturbance of labyrinthine-vestibular function."  (Id. at 30.)  See 20 C.F.R.

10

Part 404, Subpart P, App. 1, § 2.07 ("Listing 2.07").  The
plaintiff also contends that the ALJ improperly evaluated the
medical evidence of the plaintiff's other health problems, which
include, <u>inter</u> <u>alia</u>, migraines, obesity, and depression.  (Pl.
Br. at 20-21.)

The Court disagrees.  The ALJ properly evaluated the
evidence in reaching the conclusion that the plaintiff's
condition does not meet a listed impairment.  (<u>See</u> A.R. at 38-
39.)  In step three of the sequential analysis, "the ALJ must
determine whether the impairment is equivalent to one of a number
of listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  If the
impairment meets or equals one of the listed impairments, the
claimant is conclusively presumed to be disabled." <u>Pearson v.</u>
<u>Barnhart</u>, 380 F.Supp.2d 496, 504 (D.N.J. 2005) (quotations and
citations omitted).  If a claimant does not suffer from a listed
impairment or its equivalent, the analysis proceeds to steps four
and five.  <u>Id.</u>  The ALJ need only provide "sufficient development
of the record and explanation of findings to permit meaningful
review" and is not required "to use particular language or adhere
to a particular format in conducting his [or her] analysis."
<u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004).

The ALJ reviewed the medical evidence and testimony and
applied a thorough analysis.  (<u>See</u> A.R. at 26-39.)  At step two,

11

the ALJ found that the plaintiff's vestibular dysfunction with migraine headaches, depression, and obesity constituted "severe impairments" that impose significant restrictions on her ability to "[work] around heights or with hazardous machinery." (Id. at 38.)  At step three of the analysis, the ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, [App.] 1."  (Id.)

After performing a review of the plaintiff's medical records, the ALJ properly weighed the evidence and concluded that the plaintiff does not suffer from a listed impairment.  (See id. at 29-39.)  Listing 2.07, disturbance of labyrinthine-vestibular function, is "characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing." 20 C.F.R. Part 404, Subpart P, App. 1, § 2.07.  Listing 2.07 requires both: (1) "Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests", and (2) "Hearing loss established by audiometry."  Id.  The plaintiff cannot establish disability under Listing 2.07 if she does not meet both of these requirements.  Id.

The Court finds that the ALJ was correct in holding the plaintiff has not established the "progressive hearing loss" required to meet Listing 2.07.  (See A.R. at 38.)  The ALJ

12

properly relied on evidence from the plaintiff's treating physicians, Dr. Gizzi and Dr. Downey, in determining that she did not suffer from hearing loss.  (Id.)  Dr. Gizzi stated that the plaintiff denies hearing loss, and both Dr. Downey and Dr. Gizzi indicated on questionnaires that the plaintiff does not suffer from progressive hearing loss.  (Id. at 249, 322, 415.)  Dr. Bernard and Dr. Spitz, who also evaluated plaintiff, both noted that audiometric testing indicates the plaintiff's hearing is normal through 4000Hz and her speech discrimination is 100 percent in both ears.  (Id. at 244-245, 303.)  Furthermore, the plaintiff herself denies any history of known hearing loss.  (Id. at 244).

     Plaintiff contends that her vestibular dysfunction has been demonstrated by testing, evidence of which does exist at certain points on the record.  (Dkt. entry no. 11, Pl. Resp. at 1-2; see A.R. at 206, 223, 237, 309.)  Evidence that vestibular dysfunction was not demonstrated by testing, however, also exists on the record.  (See A.R. at 202, 249.)  Because the ALJ based his finding that the plaintiff does not suffer from progressive hearing loss on sufficient evidence, the ALJ did not need to consider whether vestibular dysfunction was established with caloric or other vestibular tests.  See generally 20 C.F.R. Part 404, Subpart P, App. 1, § 2.07.  This Court thus agrees with the

13

ALJ that the plaintiff fails to meet the requirements for Listing 2.07.  (<u>See</u> A.R. at 38.)

The Court also finds the ALJ was correct in concluding the plaintiff's migraines, depression, and obesity did not meet the requirements for listed impairments.  There is substantial evidence that medication relieves her migraines and the depression does not impair her ability to perform simple and repetitive tasks.  (<u>Id.</u> at 309-314, 424, 501.)  There is no evidence that her obesity increases the severity of her other impairments as she is still able to engage in activities of daily living.  (<u>Id.</u> at 309.)  These findings are further supported by Dr. Fechner, a medical expert, who testified that the plaintiff's condition does not meet a listed impairment.  (<u>Id.</u> at 490.)  The Court therefore finds that the ALJ properly concluded the plaintiff does not have an impairment that meets the listings in Appendix 1, Subpart P, Regulations No. 4.  (<u>See id.</u> at 38.)

**B.   Sufficiency of the ALJ's Explanation at Step Four**

The plaintiff contends the ALJ's decision regarding residual functional capacity is "merely conclusory and is not supported by the medical evidence." (Pl. Resp. at 6.)  Specifically, the plaintiff claims (1) the ALJ's determination regarding plaintiff's credibility should be reversed, (2) the ALJ was wrong to consider the plaintiff's hobbies and household tasks as evidence of her residual functional capacity, and (3) the ALJ failed to consider

14

the plaintiff's other physical complaints.  (Pl. Br. at 20-21, 23, 29.)

This Court disagrees.  The ALJ adequately explained the basis for residual functional capacity to perform sedentary work.  (See A.R. at 39.)  At step four and step five, the ALJ "must determine whether the claimant retains the ability to perform either his former work or some less demanding employment."  Pearson, 380 F.Supp.2d at 504 (quotation and citation omitted).  Residual functional capacity is defined as what an individual "can still do despite [his or her] limitations. . . . If the [plaintiff] can meet his or her past work demands, then he or she is not disabled within the meaning of the Act."  Id.  (quotation and citation omitted).

The ALJ properly analyzed the plaintiff's residual functional capacity.  (See A.R. at 39-42.)  In making his finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (Id. at 39-40.)  The ALJ found that the plaintiff's "past relevant work as a clerk/typist, account specialist, and school aid was sedentary work that involved simple, repetitive tasks."  (Id. at 42.)  The ALJ concluded that "[i]n comparing the [plaintiff's] residual functional capacity with the physical and mental demands of this

work, the undersigned finds that the [plaintiff] is able to perform it as actually performed." (<u>Id.</u>)

The plaintiff claims the ALJ erred in the determination of plaintiff's credibility.  The plaintiff points to a later finding that she suffers from a disability to support this assertion. (Pl. Br. at 21.)  The Court notes the later finding entitles the plaintiff to disability beginning in February 2008, and does not encompass the time period beginning in June 2004, which is in question here.  (<u>See</u> Def. Br., App. A.)  The plaintiff claims the findings on credibility "must be based on more than mere speculation."  (Pl. Br. at 21.)  The plaintiff further asserts she is credible because she "testified to her impairments at the hearing, they are found in all of the medical reports, supported by the objective testing and are consistent throughout the record."  (<u>Id.</u>)

The Court disagrees.  The ALJ determines credibility by examining "the extent to which [plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The ALJ properly considered the plaintiff's subjective complaints, and found that they were not completely supported by objective medical evidence.  (A.R. at 40-41.)

There is evidence on the record that confirms the ALJ's findings.  Dr. Bernard noted that the plaintiff does not have gait instability, and Dr. Lathan also noted a normal gait and stance. (Id. at 244, 309.)  Dr. Gizzi indicated the plaintiff is capable of low stress work.  (Id. at 396.)  Dr. Fechner found the plaintiff has no physical limits aside from her vertigo symptoms. (Id. 489-491.)  Dr. Cavanaugh stated that the plaintiff "appears to be capable of performing simple and complex tasks with supervision and function independently.  She appears to be capable of maintaining attention and concentration for tasks."  (Id. at 314.)

The ALJ did not err in finding the plaintiff's subjective complaints and testimony are not entirely credible.  (See id. at 41.)  The plaintiff testified she could not take public transportation; this is contradictory to Dr. Cavanaugh's assertion that she does use public transportation.  (Id. at 314, 505.) Significantly, the plaintiff has consistently reported that she is able to drive locally.  (Id. at 314, 365, 489-90.)  Her treating physician, Dr. Gizzi, stated she can drive at low speeds.  (Id. at 474.)  None of the plaintiff's physicians have recommended she notify the Division of Motor Vehicles of an inability to drive. (Id. at 489-90.)  Indeed, the ALJ found that "[l]ogic would dictate that if the [plaintiff] were even slightly disoriented by vertigo, she could not drive at all."  (Id. at 41.)  Accordingly,

17

the Court holds the ALJ properly found that the plaintiff is not completely credible.  The ALJ properly discounted the opinions of the plaintiff's treating physicians because they relied on plaintiff's subjective complaints.  (Id. at 41.) See Plummer, 186 F.3d at 429 (discussed supra).

The plaintiff claims the ALJ should not have considered her activities of daily living in determining residual functional capacity.  (Pl. Br. at 23; Pl. Resp. at 6.)  The plaintiff cites 20 C.F.R. § 416.972 for the assertion that daily activities are not considered substantial gainful activity.  (Pl. Resp. at 6.) 20 C.F.R. § 416.972 is inapposite here; while it states that the daily activities are not alone substantial gainful activity, it does not preclude the ALJ from considering the plaintiff's activities as evidence of ability to work.  Daily activity is in fact one of the factors the ALJ is to consider in determining how the plaintiff's symptoms impact residual functional capacity. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  The Court finds that consideration of daily activities in relation to the plaintiff's residual functional capacity was proper here.

The plaintiff also contends that her daily activities do not translate into an ability to perform substantially gainful activity.  (Pl. Br. at 23.)  The Court disagrees.  There is substantial evidence of the plaintiff's daily activities to support the ALJ's finding that the plaintiff is able to perform

sedentary work.  The plaintiff is consistently able to perform activities of daily living such as cleaning, cooking, laundry, shopping, and managing money.  (A.R. at 235, 314.)  She also engages in leisure activities such as watching television, reading, and scrap booking.  (Id. at 435.)  The ALJ considered these activities and found they "suggest that she is able to perform at least simple and repetitive tasks in a competitive work setting on a sustained basis."  (Id. at 42.)

The plaintiff argues that the ALJ failed to consider her other symptoms, specifically "pain, limitation of motion and function, dizziness, migraine headaches, obesity, and mental impairments including anxiety, depression, and insomnia."  (Pl. Br. at 20-21.)  The plaintiff suggests the ALJ ignored the side effects of the plaintiff's medication.  (Id. at 23.)

The plaintiff specifically claims that the ALJ did not apply the correct standard concerning pain.  The plaintiff cites Hargenrader v. Califano, 575 F.2d 434, 436 (3d Cir. 1978), for the assertion that specific findings are required regarding pain.  (Pl. Br. at 21.)  The plaintiff stated that her eye pain is not controlled by the medication during testimony on May 10, 2007.  (A.R. at 501.)  However, Dr. Gizzi noted on May 3, 2007, that the eye pain had subsided.  (Id. at 423.)  Dr. Downey also reported that medication controls the plaintiff's eye pain.  (Id. at 263.)  The Court finds the ALJ sufficiently addressed the validity of the

19

plaintiff's subjective complaints in the discussion of her credibility. (<u>Id.</u> at 41.)  The ALJ also addressed the issue of pain when he noted the plaintiff does not take any other medications to control her headaches. (<u>Id.</u> at 40.)

The Court also finds the ALJ performed sufficient review of plaintiff's medical records to support his findings regarding plaintiff's other symptoms.  The ALJ discussed the plaintiff's dizziness and limitation of motion and function in his description of her history. (<u>Id.</u>)  Those symptoms were also addressed with the finding that she should avoid heights and hazards and perform sedentary work. (<u>Id.</u> at 39.)  The plaintiff's complaints of migraine were considered and the ALJ noted they are manageable with medication and do not meet listing requirements. (<u>Id.</u>)  The ALJ also addressed the plaintiff's obesity and noted it did not impair her daily living activity and her treating physician did not consider it a limitation. (<u>Id.</u> at 41.)  The plaintiff's depression was considered and the ALJ found that she has mild restrictions in her daily activity and mild difficulty maintaining social functioning. (<u>Id.</u> at 41-42.)  The ALJ found that the plaintiff's depression did not interfere with her ability to perform "at least simple tasks in a competitive work setting on a sustained basis." (<u>Id.</u> at 42.)  While the plaintiff complains that she wakes up during the night, and fears she would not be able to defend herself from a home intruder, there is no evidence

on record that she was diagnosed with anxiety or insomnia.  (Id. at 504.)  The side effect of the plaintiff's medication is dizziness, and is mitigated by the plaintiff taking the medication at night.  (Id. at 502.)  The ALJ considered dizziness in his description of the plaintiff's history and recommendation that she avoid heights and hazards.  (Id. at 39-40.)  The Court finds the ALJ properly considered plaintiff's pain, symptoms, obesity, mental impairments, and side effects in his residual functional capacity determination.  (See id. at 39-42.)  Accordingly, this Court finds the ALJ's determination that the plaintiff has the residual functional capacity to perform sedentary work and return to her past relevant work is supported by substantial evidence. (See id. at 39, 42.)

## CONCLUSION

For the reasons discussed supra, the Court will affirm the Commissioner's decision denying the plaintiff's claim.  The Court will issue an appropriate Order.

                                        s/ Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge

Dated:     June 24, 2009